# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ILLINOIS TOOL WORKS INC.<br>on behalf of its ITW GLOBAL<br>BRANDS division, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:17-cv-02084 |
| v. | ) ) | |
| RUST-OLEUM CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR
## PREJUDGMENT AND POST-JUDGMENT INTEREST

Defendant, RUST-OLEUM CORPORATION ("Rust-Oleum"), opposes

Plaintiff's Motion For Prejudgment and Post-Judgment Interest ("Motion") filed by

plaintiff, ILLINOIS TOOL WORKS INC. ("ITW").

This Court should not award prejudgment interest to ITW because (1) the

Lanham Act does not provide for prejudgment interest in false advertising cases,

and (2) the jury award did not include a recovery for ITW's damages in the form of

lost profits.  If the Court awards prejudgment interest, then the time period should

commence later than requested by ITW, and should be based on interest rates set

by the Court.

I.    **Background**.

This Court entered the jury verdict in this case on July 23, 2018.  (Dkt. 157.)
The jury issued two monetary awards.

First, the jury awarded $392,406 for disgorgement of Rust-Oleum's profits.[1]
(Dkt. 157, at 19.)  This amount was split between the three advertising statements
as follows: "2X Longer" ($156,962.40), "And Remember" ($156,962.40), and
"100 Car Washes" ($78,481.20).  The jury charge reads that this award is for
"profits Rust-Oleum earned as a result of its false advertising…"  (*Id*.)  This jury
award was not for ITW's lost profits damages.

Second, the jury awarded $925,617 for corrective advertising.  (Dkt. 157, at
21.)  Again, this amount was split between the three advertising statements as
follows: "2X Longer" ($416,527.65), "And Remember" ($416,527.65), and "100
Car Washes" ($92,561.70); the jury award was not for ITW's lost profits damages.
(*Id*.)  At trial, ITW's Vice President and General Manager, James Stone, testified
that ITW has not run any corrective advertising.  (Exh. B, Tr. Day 2 a.m., at 19.)
Neither Mr. Stone, Eva Pitts (ITW's Group Brand Manager), nor any other witness
testified that ITW had any plan or interest in running any post-trial corrective

---

[1] In actuality, the trial record shows Rust-Oleum earned *no profits*.  ITW stipulated
that Rust-Oleum lost $711,789 on RAINBRELLA.  (Dkt. 157 at 6, Par. 4-6.)  Rust-
Oleum's financial expert, Mr. Todd Schoettelkotte, testified that Rust-Oleum lost
approximately $1,067,000 on RAINBRELLA.  (Exh. A, Tr. Day 4 p.m. at 47; *see*
discussion at Dkt. 176, at 11-12.)

advertising. No evidence was presented to the jury of any estimated costs for corrective advertising.

The jury award of $925,617 can only be interpreted as either the jury's guess at the amount for a future campaign of corrective advertising (s*ee* Dkt. 157, at 21 "You can award ITW the estimated cost to ITW of running a future campaign of corrective advertising"), or the jury adopting the closing argument by ITW's counsel that ITW should receive "every dollar that [Rust-Oleum] spent putting those false statements into the market." (Exh. C, Tr. Day 6 a.m., at 43.) Either way, the corrective advertising jury award is speculative prospective relief and not compensatory in nature.

Judgment has not yet been entered by this Court, and the amount of money, if any, to be awarded to ITW has not been determined. On August 30, 2018, Rust-Oleum filed its Motion for Entry of Judgment Denying ITW any Monetary Relief. (Dkt. 176.) That motion is currently pending.

On August 28, 2018, ITW filed its Motion for Prejudgment and Post-Judgment Interest. (Dkt. 174.) ITW seeks prejudgment interest of $56,279.67 based on a 4.27% interest rate. ITW asks the Court to apply the prejudgment interest commencing November 1, 2016, which it erroneously states is the date "Rust-Oleum began making the false and misleading advertising claims." (Dkt. 174, at 2.) The interest rate is ITW's calculation of "the average monthly prime

3

rate" from November 1, 2016, through August 15, 2018.  (Dkt. 174, at 3.)  ITW

also seeks post-judgment interest at a rate of 2.44%.  (Dkt. 174, at 4.)

## II.    **Argument**.

Prejudgment interest is an equitable remedy that is not automatic in a

Lanham Act case, and is not available to ITW in this case.  The Lanham Act does

not provide for prejudgment interest, except in trademark counterfeiting cases (not

present here).  Additionally, if a court awards prejudgment interest for a Lanham

Act violation, it applies only to money awarded as lost profits damages suffered by

the plaintiff and not to an award of disgorgement of defendant's profits or

prospective corrective advertising.

### A. The Lanham Act Does Not Provide For Prejudgment Interest.

ITW has sought monetary relief in this case only under Section 1117(a) of

the Lanham Act.  (Dkt. 153, at 22.)  The statute provides that "the plaintiff shall be

entitled, subject to the principles of equity, to recover (1) defendant's profits, (2)

any damages sustained by the plaintiff and (3) the costs of the action." 15 U.S.C. §

1117(a).  Glaringly absent from this Section is any mention of prejudgment

interest.  In contrast, Section 1117(b) of the Lanham Act, which identifies the relief

for trademark counterfeiting, specifically reads "the court may award prejudgment

interest…beginning on the date of the service of the claimant's pleadings setting

forth the claim for such entry of judgment." 15 U.S.C. § 1117(b).  The omission of

4

prejudgment interest from Section 1117(a), contrasted with its inclusion in Section 1117(b), was part of the rationale of the Court of Appeals for the Fourth Circuit when it reversed an award of prejudgment interest in a trademark infringement case, reasoning:

> Because Congress legislated with great precision in providing when each particular type of monetary relief is available, it is appropriate to conclude that if Congress provided for a certain type of monetary relief only in a given specified circumstance, that type of relief is not available in other circumstances…But when, as here, a statute provides particularized forms of monetary relief and explicitly authorizes prejudgment interest in some circumstances, but not others, we conclude that *prejudgment interest is not intended to be awarded except as provided in the statute.  Georgia-Pacific Consumer Products L.P. v. von Drehle Corp.*, 781 F.3d 710, 721-22 (4th Cir. 2010)(emphasis added).

Quite simply, the Lanham Act does not provide for an award of prejudgment interest in a non-counterfeit situation, making it unavailable in a false advertising case.  *See Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 2017 WL 3271706, at *33 (C.D. Cal. August 1, 2017); and *Neal Technologies, Inc. v. Unique Motorsports, Inc.*, 2017 WL 2903175, at *13 (E.D. Tex. January 20, 2017)(noting prejudgment interest is not mentioned in Section 1117(a); motion for prejudgment interest not appropriate.)

ITW cites a Seventh Circuit decision which states prejudgment interest should be "presumptively available."  *Gorenstein Enters., Inc. v. Quality Care-*

5

*USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989).[2]  However, other courts, such as the

Fourth Circuit in the *Georgia Pacific* opinion discussed *infra*, have not followed

that notion.  Indeed, the *Gorenstein* case contains a concurring opinion in which

Judge Ripple noted "the district court must give its prime attention to the intent of

Congress in enacting the substantive statutory provision at issue," and that

"prejudgment interest might be inappropriate at some times."  *Id*. at 439.  Other

cases cited by ITW are distinguishable.  In *United Phosphorus*, the Tenth Circuit

did not apply prejudgment interest automatically, but instead remanded so the

lower court could determine whether interest would serve as compensation and

whether equity precluded an interest award.  *United Phosphorus, Ltd. v. Midland

Fumigant, Inc.*, 205 F.3d 1219, 1237 (10th Cir. 2000).  *Exxon Mobil* was a

trademark counterfeiting case that based its award of prejudgment interest on

Section 1117(b).  *Exxon Mobil Corp. v. Exxonmobil for Exp., Imp. & Trade Ltd.*,

No. 3:12-CV-01122-P, 2013 WL 12124589 (N.D. Tex. Aug. 23, 2013).

　　　Prejudgment interest is not identified as a remedy available to ITW under

the Lanham Act.  For this reason alone, the Court should deny ITW's Motion as it

pertains to prejudgment interest.

---

[2] In *Gorenstein*, the infringer's arguments were "so weak," the infringement "so
deliberate," and "indeed outrageous," that prejudgment interest was "particularly
appropriate."  *Gorenstein*, 874 F.2d at 435-36.  Here, by any measure, Rust-
Oleum's actions do not rise to that level as evidenced by facts such as Judge
Lake's denial of ITW's preliminary injunction motion and Rust-Oleum's hiring of
a third party to substantiate the Lasts 2X Longer statement.  (Exh. D at 3-6; )

### B. Prejudgment Interest Should Not Be Awarded Because the Jury Did Not Award ITW Lost Profits Damages.

If the Court determines that it has the discretion to award prejudgment interest despite the remedy not being provided under the Lanham Act, it nevertheless has "some latitude in fashioning" a rule as to when to award prejudgment interest. *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 713 (S.D. Tex. 2013). This is because "there is no settled rule as to what circumstances justify an award of prejudgment interest." *Id*.

The point of an award of prejudgment interest is to make a plaintiff whole. Prejudgment interest compensates a plaintiff for being unable to use the money it lost from the time the claim accrued until judgment is entered. *Nat'l Products, Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1172-3 (W.D.Wash. 2010). In other words, the plaintiff's loss of the beneficial use of its money over a period of time, such as through investments or reduction of debt, causes additional damage that can be remedied by prejudgment interest. *See Georgia-Pacific*, 781 F.3d at 722.

It thus follows that prejudgment interest is unavailable for monetary recovery based on equitable remedies such as disgorgement of a defendant's profits and not a plaintiff's lost profits damages. This is particularly true here because ITW gave the jury no basis on which to ascertain the amount of money it lost by Rust-Oleum's advertising (or even the fact of any such damage). Without a

7

basis for determining the amount of loss, it would be inequitable for ITW to receive prejudgment interest on that unascertainable amount.

In *Clearline Technologies*, a case ITW relies on, Judge Ellison of the Southern District of Texas held that the plaintiff was *not* entitled to prejudgment interest on an award of disgorgement of defendant's profits because it "has suffered no lost opportunity cost with regard to [defendant's] profits." *Clearline Technologies*, 948 F. Supp. 2d at 713 (holding prejudgment interest only available for the award based on plaintiff's lost profits). The Eastern District of Texas reached a similar result in a trademark infringement case when it held "that an award of prejudgment interest is not appropriate" where the jury award is based upon defendant's profits. *Neal Technologies*, 2017 WL 2903175, at *13. The Court held that in such a situation an award of prejudgment interest "would be an inequitable windfall" to the plaintiff. *Id*.; *see Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 475 (8th Cir. 2011)(upholding denial of plaintiff's motion for prejudgment interest because the initial award adequately compensated plaintiff and anything else would be inequitable.)

This mirrors the Fourth Circuit ruling in *Georgia-Pacific* where, after finding that prejudgment interest is not listed in Section 1117(a) as an available remedy, it noted prejudgment interest was not available under the facts of the case. Because Georgia-Pacific, like ITW in this case, did not attempt to prove its own

8

lost profits damages, but rather sought a disgorgement of profits, the court held

prejudgment interest would not be awarded.  *Georgia-Pacific*, 781 F.3d at 722.

In this case, even if the Court determines it has the latitude to award

prejudgment interest, ITW should not receive it on the jury award of $392,406

which represents disgorgement of Rust-Oleum's profits.  This is not money that

ITW lost, or damages that it suffered due to Rust-Oleum's advertising.  To

paraphrase the *Neal Technologies* court, awarding prejudgment interest to ITW for

Rust-Oleum's profits represents a windfall.  Awarding prejudgment interest in this

situation does *more* than make ITW whole.

Similarly, prejudgment interest should not be applied to the jury award of

$925,617, which represents money for prospective corrective advertising, and not

money actually spent by ITW.[3]  ITW is not entitled to prejudgment interest on

money it did not spend.  That would be a double recovery, at least with respect to

the interest.  Mr. Stone testified that ITW has not run any corrective advertising, so

the award is not compensatory in nature.  This is not money that ITW spent that it

was unable to invest or use in another manner.  Prejudgment interest on this

amount is not necessary to make ITW whole.  Indeed, there is no guarantee that

ITW will even use this money for corrective advertising since ITW has not

---

[3] An award for corrective advertising where the plaintiff has not run any corrective advertising and has no plans to do so is "speculative," and "punitive, rather than compensatory."  *Clear Choice Holdings, LLC*, 2016 WL 8136622, at *6 (request for corrective advertising award denied.)

advertised its own RAIN-X windshield rain repellent for a number of years. (Exh. E, Tr. Day 1, p.m., at 73.) An award of prejudgment interest on the corrective advertising award would also be an inequitable windfall for ITW.

### C. If The Court Awards Prejudgment Interest, Even Though It Is Not Provided In The Lanham Act And Not Allowed For Equitable Remedies, It Should Not Adopt ITW's Time Period.

ITW argues that prejudgment interest should begin on November 1, 2016, because that is when Rust-Oleum "began making" the advertising claims. (Mot., at 2.) This is based on the use of the Lasts 2X Longer statement at a trade show and not in interstate commerce to the public as would be necessary for ITW's claim to accrue.

There are three advertising statements that ITW argued constitute false advertising – the Lasts 2X Longer statement, the "And Remember…" statement, and the Lasts Over 100 Car Washes statement. The "And Remember…" statement appeared only in an infomercial that did not air until January 2017. (Exh. F, Tr. Day 3 p.m, at 43.) Thus, the earliest date when all three statements were used in communications to the public is January 1, 2017. The time period for prejudgment interest should not commence earlier than this date.

There are two later dates the Court could consider as alternatives for the beginning of the time period for prejudgment interest. First, March 23, 2017, the date when ITW first notified Rust-Oleum had an issue with the Lasts 2X Longer

and Lasts Over 100 Car Washes statements.  (Exh. G.)  Second, July 23, 2017, the

date the jury returned its verdict.  (*See* Dkt. 157.)  Because the Court denied ITW's

motion for preliminary injunction in this case, thereby acknowledging the validity

of Rust-Oleum's defenses, it is equitable for the Court to begin the time period for

prejudgment interest on July 23, 2017.

### D. If Post-Judgment Interest Is Applied, It Should Be At The Interest Rate Set By The Court In Its Rules.

Any award of post-judgment interest should use the interest rate set by the

District Court for the Southern District of Texas on the date of the entry of

judgment, and which can be found at http://www.txs.uscourts.gov/page/post-

judgment-interest-rates.  ITW's request to set the interest rate at this juncture is

premature.

### III.   Conclusion.

For the foregoing reasons, Rust-Oleum requests that Motion For Prejudgment

And Post-Judgment Interest be denied as set forth in the attached proposed order.

Respectfully submitted,

Date: September 18, 2018          */s/* Philip A. Jones_____
                                 Philip A. Jones (*pro hac vice*)
                                 Illinois Bar # 6217213
                                 John T. Gabrielides (*pro hac vice*)
                                 Illinois Bar # 6198323
                                 Genevieve E. Charlton (*pro hac vice*)
                                 Illinois Bar # 6312219
                                 BARNES & THORNBURG LLP
                                 One North Wacker Drive

11

Suite 4400
Chicago, IL 60606-2833
Phone: 312-357-1313
E-Mail: pjones@btlaw.com
E-Mail: jgabrielides@btlaw.com

Jon B. Hyland
Texas Bar # 24046131
Southern District Bar # 1145969
BARNES & THORNBURG LLP
2100 McKinney Avenue
Suite 1250
Dallas, TX 75201-6908
Phone: 214-258-4123
E-Mail: Jon.Hyland@btlaw.com

Attorneys for Rust-Oleum Corporation

## **Certificate of Service**

I hereby certify that on September 18, 2018, a copy of the foregoing was filed electronically with the Southern District of Texas, Houston Division. Notice of this filing will be sent by operation of the Court's ECF system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

*/s/Jon Hyland*